## C. R. Strong, et al., v. The People of the State of Illinois, for the use of Louis Morton, et al.

1. IMPEACHMENT—*what proper by way of.* In an action under the Dram-Shop Act it is proper to impeach a witness who has testified that but for the fact that the deceased had a knife he would not have shot him, by showing that he had previously stated that but for the fact that he himself was drunk he would not have shot him.

2. RES JUDICATA—*what not, in an action under the Dram-Shop Act upon bond.* An action brought on behalf of minor children under the Dram-Shop Act upon a bond given by a dram-shop keeper is not barred by a judgment rendered against their mother in an action brought upon the same bond based upon the same misconduct of the defendants.

Action of debt. Appeal from the Circuit Court of Jackson County; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

HERBERT & LEVY, for appellants.

ANDREW S. CALDWELL, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was an action of debt on a bond, brought under the Dram-Shop Act in the name of the People of the State of

Illinois, for the use of Louis Morton and others, minor children of Howard Morton, deceased, by Rosa Morton, their mother and next friend. The declaration, which consists of only one count, charges, that C. R. Strong conducted a dram-shop in the city of Carbondale, Illinois, and gave a bond in the sum of $3,000 conditioned according to law, with appellants, Rudolph Stecher and Joe Steinle, as bondsmen; that on the 28th day of November, 1900, and on divers other days he sold and gave away to one Abe Sheffe and to Howard Morton, the father of said minor children, intoxicating liquors to be drank in, upon and about the building and premises where the same were so sold and given away; that by reason of such selling and giving away of intoxicating liquors to said Sheffe and said Morton by said Strong, on the day aforesaid, said Sheffe and Morton each became intoxicated and while so intoxicated, they became involved in a quarrel and got into an altercation with each other, in which altercation the said Sheffe by reason of such intoxication, unlawfully, wilfully and feloniously shot and killed the said Morton; that thereby said minors lost and were deprived of their means of support and sustained damages, etc. Appropriate pleas were filed and upon the trial there was a verdict and a judgment in favor of appellees for $1,500.

The errors assigned and argued by appellants are the refusal of the court to give a peremptory instruction to find a verdict for the defendants at the close of the plaintiff's evidence, the refusal to admit certain evidence on behalf of defendants, the admission of certain evidence offered by the plaintiff in rebuttal and the giving of plaintiff's instruction number 9.

It appears from the proofs that on the night of November 28, 1900, Abe Sheffe, Howard Morton, Louis Williams and George McCracken, all negroes, were in a room up stairs in the same building in which said Strong conducted his dram-shop; that they were engaged in gambling at a game of "craps"; that during the progress of the game, a dispute arose between Sheffe and Williams as to

which had won a certain bet; that Morton took a knife out of his pocket and walked around to Sheffe and said, "Abe, Louis won your money fair"; that Sheffe said, "Howard, what are you going to do with that knife, shut it up and put it in your pocket"; that Howard shut up the knife and put it in his pocket, turned around and started away, when Sheffe pulled out a revolver; that Morton looked back and saw Sheffe coming with the revolver and caught hold of him; that a scuffle ensued in which several shots were fired by Sheffe, and Morton was killed. It further appeared from the proofs that Sheffe was in Strong's saloon drinking the night the killing occurred and that he was intoxicated; that Sheffe's intoxication was caused in whole or in part by liquors procured by him at Strong's dram-shop; that soon after the killing Sheffe was arrested at Strong's saloon and was still intoxicated; that when sober Sheffe was peaceable but when drinking was quarrelsome; that at the time of his death Morton was a laborer, 31 years of age, making from a dollar to a dollar and seventy-five cents a day and that he supported his wife and children. The evidence also tended to show that the killing of Morton was brought about by reason of the intoxication of Sheffe. Under the circumstances above detailed, the trial court could not properly have done otherwise than refuse to give the jury a peremptory instruction to find for the defendants.

On the trial appellant offered in evidence the record in the case of the People for the use of Rosa Morton v. Strong, Stecher and Steinle, appellants here. The record purported to show that Rosa Morton, the mother of the minors for whose use this suit was brought, had brought suit upon the same bond upon which this suit is based for the injury to herself, caused by the killing of her husband by Sheffe; that in said suit the verdict of the jury was in favor of the defendants and that the motion for a new trial in said cause was denied. Appellants insist that if they were not liable to Rosa Morton for the loss of support sustained by her, that they cannot be held liable to her minor

children for the loss of support of their father caused by the same act.

One of the provisions of the bond sued upon was that said Strong should pay to all persons all damages they might sustain, either in person or property or means of support by reason of his selling or giving away intoxicating liquors, and section 5 of the Dram-Shop Act provides that, "Any bond taken pursuant to this section may be sued upon for the use of any person or his legal representatives, who may be injured by reason of the selling or giving away any intoxicating liquors by the person so licensed or by his agent or servant." Under this section the minor children of deceased had the same right of action on the bond that their mother had and it was immaterial so far as their rights were concerned, whether the mother was successful in her suit or not. The record in the former case could, therefore, have no bearing upon the right of appellees to recover in this case and there was no error in refusing to admit the same.

It is further urged by appellants that the trial court erred in permitting several witnesses to testify for appellees in rebuttal to conversations had with Sheffe after the death of Morton, in which Sheffe told them that the reason he killed Morton was because he (Sheffe) was drunk and that he would not have killed him if he had not been drunk. Counsel for appellants claims that this evidence was inadmissible for any purpose and that while it was admitted for impeaching purposes, yet it in fact tended to show that Sheffe killed Morton in consequence of the former's intoxication and that such evidence was not proper in rebuttal. On his direct examination Sheffe was asked, "Why did you shoot Howard Morton," and answered, "I shot him because he had a knife. I thought he was going to kill me and he would have done it;" also "Would you have shot him if he had not gone at you with a knife?" and the answer was "No, sir, never in the world." The tendency of this testimony was to show that Sheffe shot Morton in self-defense and not by reason of his (Sheffe's) intoxi-

cation.   On cross-examination he was asked if he had not told several witnesses who were named, that the reason he killed Morton was that he (Sheffe) was drunk and if he had not been drunk he would not have done so, and in each instance he denied making such a statement.   It therefore became proper by way of impeachment to place these witnesses upon the stand for the purpose of showing that Sheffe had made such statements to them.

Appellees' instruction No. 9 given by the court, stated the rule in reference to impeachment of witnesses and was in legal form.   Appellants do not object to the form of this instruction but insist the impeaching evidence was improperly admitted and therefore no instruction in reference to such evidence should have been given.   As we have held the impeaching testimony admissible, it follows that the court did not err in giving the instruction complained of.

The judgment of the court below will be affirmed.

*Affirmed.*